# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wynne Transportation LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )  Cause No. _____ |
| | ) |
| City of New York, | ) |
| | ) |
| *Defendant.* | ) |

## COMPLAINT, REQUEST FOR DECLARATORY JUDGMENT, AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Wynne Transportation LLC ("Wynne") files this Complaint, Request for Declaratory Judgment, and Request for Injunctive Relief against Defendant City of New York ("Defendant") and, in support, would allege as follows.

## INTRODUCTION

1. New York City established itself as a sanctuary for migrants seeking asylum in the United States. On August 7, 1989, Mayor Koch issued Executive Order 124 and mandated that all city services be made available to any undocumented alien. See Executive Order No. 124, City Policy Concerning Aliens, City of New York, Office of the Mayor (Aug. 7, 1989), attached as Exhibit A. In June 1994, Mayor Rudolph Giuliani publicly proclaimed: "If you come here and you work hard and you happen to be in an undocumented status, you're one of the people who we want in this city." See Kaczynski, Andrew, *Rudy Giuliani fought federal government to defend undocumented immigrants as NYC mayor*; https://www.cnn.com/2016/11/16/politics/kfile-rudy-giuliani-undocumented-

immigrants/index.html (last accessed Jan. 30, 2024). Mayor Bill de Blasio signed on November 14, 2014, two laws that—to this day—dramatically preclude New York City law enforcement from assisting with U.S. Immigration. See *Mayor Bill de Blasio Signs into Law Bills to Dramatically Reduce New York City's Cooperation with U.S. Immigration and Customs Enforcement Deportations*; https://www.nyc.gov/office-of-the-mayor/news/520-14/mayor-bill-de-blasio-signs-law-bills-dramatically-reduce-new-york-city-s-cooperation-with#/0 (last accessed Jan. 30, 2024).

2. In recent months, Mayor Eric Adams' ("Mayor Adams") position on New York City's sanctuary status appears influx. Mayor Adams criticizes other public officials for the current crisis and the flow of individuals to the "City of Immigrants," and yet he has simultaneously relocated migrants from New York City to other communities and states. Unable to draw attention and aid from Washington, Mayor Adams has resorted to violating the U.S. Constitution with Executive Order No. 538 ("EEO 538").

3. Wynne files this suit asking the Court to strike down EEO 538 as unconstitutional. First, Mayor Adams declared in EEO 538 that he seeks to impact and dictate policy within the federal government's exclusive authority over immigration, and thus EEO 538 violates the Supremacy Clause. Second, EEO 538 is an unconstitutional attempt to discriminate against and interfere with interstate and foreign commerce. Mayor Adams' actions also violate Wynne's equal protection and due process rights under the U.S. Constitution.

Case 1:24-cv-01062   Document 1   Filed 02/13/24   Page 3 of 20

**JURISDICTION & VENUE**

4. Wynne brings this lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 to redress the deprivation of Wynne's constitutional rights by a person acting under color of state law.

5. The Court has jurisdiction over this action because Wynne asserts claims under the U.S. Constitution and the laws of the United States. *See* 28 U.S.C. § 1331.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because the events giving rise to Wynne's claims occurred in this District.

**PARTIES**

7. Plaintiff Wynne Transportation LLC is a limited liability company organized under the laws of the State of Delaware.

8. Defendant City of New York is a municipal corporation of the State of New York and may be served by delivering a copy of the summons and of the Complaint to the Chief Executive Officer of the City of New York. FED. R. CIV. P. 4(j)(2)(A).

**FACTS**

9. In 2021, the State of Texas contacted Wynne to transport migrants to New York City as part of what Governor Abbott declared Operation Lonestar. Though Wynne itself provides transportation services to the State of Texas, Wynne also contracts with various other transportation services to fulfill its obligations.

10. Operation Lonestar is wholly funded by the State of Texas. The program provides migrant asylum seekers the opportunity to travel to select locations who wish to travel outside of Texas, including New York City, regardless of their financial capacity to travel on their own. Participation in Operation Lonestar is voluntary.

3

***The City of New York tries to block the transportation program.***

11. On October 7, 2022, Mayor Adams issued Emergency Executive Order No. 224, which declared a state of emergency. *See* Emergency Executive Order No. 224, Office of the Mayor (Oct. 7, 2022), attached as Exhibit B. On December 27, 2023, Mayor Adams issued Emergency Executive Order No. 538 to curtail entry of migrants into New York City by charter buses. *See* Emergency Executive Order No. 538, Office of the Mayor (Dec. 27, 2023), attached as Exhibit C.

12. Mayor Adams executed EEO 538 to restrict interstate commerce and specifically impede and stop buses of migrants coming from Texas. He states so when he proclaims EEO 538 presumptively applies to any bus "coming from a state from which a substantial number of charter buses have arrived carrying people seeking emergency shelter and other immediate services in New York City in the last 60 days[.]" *Id*. He should have simply said any bus from Texas and referenced Governor Abbott. Instead, he left his remarks about the Texas Governor to a press conference announcing EEO 538. *See Coalition of Cities Call for More Federal Support to Respond to National Migrant Crisis, Mayor Adams Issues Executive Order Requiring Charter Bus Companies to Coordinate Safe, Orderly Migrant Arrivals*; https://www.nyc.gov/office-of-the-mayor/news/991-23/coalition-cities-call-more-federal-support-respond-national-migrant-crisis-mayor (last accessed on Feb. 13, 2024).

13. EEO 538 places uncompromising limitations on "an operator of any charter bus who knows or reasonably should know that such charter bus will be transporting

4

ten or more passengers who are likely to seek emergency shelter and other immediate services in New York City." *See* Ex. C, EEO 538, § 2.

14. EEO 538 requires Wynne and any other charter bus company to, among other things:

    a. Notify the Commissioner of Emergency Management of the anticipated date and time of arrival at least 32 hours in advance. *Id.* § 2(a).

    b. Provide the Commissioner with a manifest of the operator's passengers, containing detailed information about the passengers. *Id.* § 2(b).

    c. Drop off passengers only between the hours of 8:30 a.m. to 12:00 p.m., Monday through Friday. *Id.* § 2(c).

    d. Drop off passengers only at a designated location. *Id.* § 2(d).

15. A violation of the above requirements is considered a class B misdemeanor. *Id.* § 4.

16. Mayor Adams also directed all other surrounding municipalities to enact the same executive order as part of a multi-city and multi-state plan to impede migration from Texas into New York.

> And we coordinated and communicated with the municipalities in the area. They all should do the same EO. They should look at everyone that has the train line that leads into the city. Everyone that has municipalities around us, they should do the same thing with EO. This is what we learned from Chicago. He tried it in Chicago also. We're dealing with a person who just wants to disrupt. It's not just about raising the attention on an issue. This is a mean-spirited way using people and disrupting municipalities, not only in this region and in other parts of the entire country.

Transcript of Mayor Adams' Media Conference on Jan. 2, 2024, https://www.nyc.gov/office-of-the-mayor/news/002-24/transcript-mayor-adams-holds-in-person-media-availability (last accessed on Jan. 16, 2024).

17. The message is clear: any bus company working with the State of Texas on the transportation of migrants must be punished.

> We're going to pivot and shift and be prepared to send the right message to the bus operators, you should not participate in the actions of Governor Abbott. Brooklyn Bridge, do you have a photo of the Brooklyn Bridge.

*Id.*

18. The City of New York is also planning for extraterritorial enforcement of EEO 538.

> **Question:** Can NYPD officers go to New Jersey and get New Jersey police officers to help them to stop the buses from coming? What's legal? You talked about what are the options. What are the options?
>
> **Mayor Adams:** That's what we're exploring. This is new territory, and we are looking over every authority that we have and really have to commend my special counsel and the corp counsel, they are looking over every authority we have because we're dealing with an unprecedented situation of a person that's trying to destabilize cities. Chicago, as well as Denver, New York City, Massachusetts. So, this is unprecedented.

*Id.*

19. The City's goal is to convince cities outside the State of New York to adopt the same restrictions.

> So, we think there's real room for collaboration, like we've done with the other cities. Our goal was very clear. We want to build a coalition of mayors and governors like the Massachusetts governor has been strong on this issue. That's our goal. And I'm going down to the Associations of Mayors and we're going to raise it as well.

*Id.*

## COUNT I – DECLARATORY JUDGMENT
### (Violation of the Commerce Clause of the U.S. Constitution)

20. The preceding paragraphs 1–19 are incorporated by reference.

21. "[I]t is settled beyond question that the transportation of persons is 'commerce,' within the meaning of [the interstate commerce clause of the U.S. Constitution]." *Edwards v. California*, 314 U.S. 160, 166 (1941). EEO 538 interferes with trips from points outside of State of New York, and it is thus controlled by the Commerce Clause. U.S. Const. art. I, § 8, cl. 3.

22. Local ordinances and orders that discriminate against interstate commerce, whether facially or in effect, are invalid. *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). The Court should apply the "strictest scrutiny" to analyzing a discriminatory law. *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979).

23. EEO 538 discriminates against interstate commerce both on its face and in effect.

24. An order or ordinance that facially applies even-handedly to in-state and out-of-state market participants may violate the Commerce Clause if it burdens interstate commerce by impacting the out-of-state participants more than their in-state counterparts. In *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), allegedly to prevent fraud in the marketing of apples, a North Carolina statute required all apples shipped in closed containers in North Carolina, to have either a USDA label or no label. The Supreme Court held that the statute violated the Commerce Clause because its practical effect was to burden interstate commerce by prohibiting the display of superior Washington State grades on apples.

7

25. Similarly, Mayor Adams admits he issued EEO 538 as a policy against the immigration of persons into New York. EEO 538 targets Wynne and other out-of-state bus companies. *See Coalition of Cities Call for More Federal Support to Respond to National Migrant Crisis, Mayor Adams Issues Executive Order Requiring Charter Bus Companies to Coordinate Safe, Orderly Migrant Arrivals*; https://www.nyc.gov/office-of-the-mayor/news/991-23/coalition-cities-call-more-federal-support-respond-national-migrant-crisis-mayor (last accessed Feb. 13, 2024) ("Effective today, chartered buses bringing migrants into the city—many of which have been and continue to be sent by the State of Texas—will be required to provide 32 hours' notice before arriving in New York City and information on the population they are transporting, as well as be required to drop passengers off at a designated location in Manhattan only during specified hours"). The stringent limits placed on these buses, coupled with harsh punishment for violating EEO 538, is intended to and has the effect of precluding Wynne from transporting persons into New York City.

26. Additionally, a state law that has an extraterritorial effect violates the Commerce Clause. Therefore, under the Commerce Clause, a state law cannot control conduct beyond the boundaries of the state. *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (striking down a Connecticut statute requiring the out of state shippers of beer to affirm that their posted prices are not higher than the prices in bordering states). "[T]he practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute

may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." *Id.*

27. EEO 538 punishes out-of-state bus charter companies and targets them for criminal prosecution with a bullseye on those working with the State of Texas. Additionally, EEO 538's unreasonable procedures and strict arrival time requirements—only applicable to interstate travel—effectively prohibit cross-country travel. As Mayor Adams admitted, the end goal is to persuade other jurisdictions to adopt the New York model to prevent the transportation companies from providing services to the State of Texas.[1]

28. Furthermore, a regulation cannot impose conditions hampering a right to pursue interstate commerce operations. *Park 'N Fly of Tex., Inc. v. City of Houston*, 327 F. Supp. 910 (S.D. Tex. 1971). In *Park 'N Fly of Tex.*, the Court held that the classification of shuttle buses from a parking lot company as commercial vehicles and prohibiting their loading and unloading at particular areas at the Houston airport, but allowing use by the same type vehicles owned by the City of Houston was a burden and obstruction to interstate commerce. *Id.* at 922–24. The Court reasoned that while purporting to be a traffic and safety regulation, the subject ordinance "was drawn to cast [the private parking company] in the role of supplying inferior parking service to airport passengers in order that the city's competitive advantage might be enhanced." *Id.* at 923–24.

---

[1] *See* https://www.cnn.com/2023/12/30/us/asylum-seekers-texas-city-mayors/index.html (last accessed on Jan. 2, 2024).

29. Similarly, EEO 538 is hampering Wynne's right to pursue interstate commerce operations by *for example*: (1) creating strict procedures, which may result in several days delay of a trip; (2) prohibiting operation after 12:00 p.m.; (3) prohibiting operation during weekends; and (4) subjecting Wynne to fines and seizure of its buses for each violation of EEO 538.

Finally, EEO 538 violates the U.S. Supreme Court's settled law in *Edwards v. California*, 314 U.S. 160 (1941). In *Edwards v. California*, an individual was convicted for violating a California statute, making it a misdemeanor to bring into California a non-resident indigent person. The California statute provided:

> Every person, firm or corporation, or officer or agent thereof that brings or assists in bringing into the State any indigent person who is not a resident of the State, knowing him to be an indigent person, is guilty of a misdemeanor.

*Id.* at 166.

30. Reversing the conviction, the U.S. Supreme Court held that the statute imposed an unconstitutional burden on interstate commerce. Then-Attorney General of California Earl Warren (later Chief Justice of the United States Supreme Court, 1953–1969) wrote a brief in support of California in *Edwards*. *See* Br. of Att'y Gen. of Cal. on Behalf of Appellee, 1941 WL 52965, attached as Exhibit D. Attorney General Warren provides an in-depth analysis of the history of migration, welfare, and state laws related to indigents. *Id.* Citing a 1940 Harvard Law Review article which surveyed similar state statutory schemes, Warren noted that the California statute had been in place for 75 years in some form and was patterned off similar statutes in

twenty-seven other states. *Id.* (citing <u>Depression Migrants and the States</u>, 53 HARV. L. REV. 1031 (Apr. 1940)), attached as Exhibit E.

31. The Court acknowledged the State's assertion that the influx of migrants into California had resulted in various issues. Still, the Court reasoned that the U.S. Constitution prohibits "attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders." *Id.* at 167. In the Court's opinion, the statute "must fail under any known test of the validity of State interference with interstate commerce." *Id.* at 167. Therefore, the ruling in *Edwards* renders EEO 538 unconstitutional for violating the Interstate Commerce Clause of the U.S. Constitution.

32. EEO 538 also violates the Foreign Commerce Clause of the U.S. Constitution, which gives the Congress the power to "regulate Commerce with foreign Nations." *See* U.S. Const. art. I, § 8, cl. 3; *see also Henderson v. Mayor of New York*, 92 U.S. 259 (1875). The Supreme Court in *Henderson* struck down a similar New York statute as unconstitutional on this ground. The New York statute at issue required every ship master and owner "to report in writing to the mayor of New York the name, birthplace, last residence, and occupation of every passenger who is not a citizen of the United States [and]…to give a bond for every passenger so reported, in a penalty of $300…conditioned to indemnify the Commissioners of Emigration, and every county, city, and town in the State, against any expense for the relief or support of the person named in the bond for four years thereafter." *Id.* at 261.

33. Wynne seeks a declaration that EEO 538 violates the Commerce Clause of the U.S. Constitution and is therefore void *ab initio*.

34. An actual controversy exists concerning EEO 538 and the requested declaration will terminate the controversy.

### COUNT II – DECLARATORY JUDGMENT
### (Violation of the Supremacy Clause of the U.S. Constitution)

35. The preceding paragraphs 1–19 are incorporated here by reference.

36. The Supremacy Clause enables Congress to preempt state law. A state law is preempted if Congress: (1) enacts a statute with an express preemption provision; (2) determines that a field must be controlled by its exclusive governance; or (3) when the state law conflicts with federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive...that Congress left no room for the States to supplement it' or where there is a 'federal interest...so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (cleaned up). The federal government has "broad, undoubted power" over immigration. *Id.* at 394. "The federal power to determine immigration policy is well settled. Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Id.* at 395. "Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders." *Id.* at 401–02.

37. "[T]he social phenomenon of large-scale interstate migration is…certainly a matter of national concern." *Edwards*, 314 U.S. at 168. "[T]his phenomenon does not admit of diverse treatment by the several States. The prohibition against transporting indigent non-residents into one State is an open invitation to retaliatory measures, and the burdens upon the transportation of such persons become cumulative." *Id.*

38. In *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013), an ordinance that required occupancy licenses before renting was deemed to infringe on Congress's authority over the subject of immigration. The ordinance was seen as forcing undocumented aliens to relocate, which was considered as establishing the city's own regulations on immigration. The court held that the criminal offense and penalty provisions of the city ordinance and its state judicial review process was preempted by federal immigration laws. *See also State v. Sarrabea*, 157 So. 3d 1 (La. App. 3 Cir. 2013) (holding that the statute prohibiting driving without documentation of lawful presence in the United States was preempted).

39. Similarly, EEO 538 is specifically designed to prevent entry of migrants into New York City by placing stringent requirements and harsh punishments on Wynne and other charter bus companies. Therefore, the City of New York is creating its own policy and regulations concerning immigration, and therefore, violating the Supremacy Clause. Chief of Staff Camille Joseph Varlack admitted that the City of New York adopted EEO 538 as an attempt to address the lack of federal action on the

13

immigration crisis. As he stated: "But let's be clear: this is not a substitute for the urgent federal action that New York City — and cities across the country — need. This is a national crisis, and it demands a national solution." https://www.nyc.gov/office-of-the-mayor/news/991-23/coalition-cities-call-more-federal-support-respond-national-migrant-crisis-mayor (Last visited February 13, 2024).

40. Ironically, New York itself was the lobbying force behind the Immigration Act of 1882, under which Congress first enacted the earliest recorded public charge exclusion. *New York v. Dep't of Homeland Sec.*, 969 F.3d 42, 65 (2d Cir. 2020). The public charge ground continued its life to the present date, through the Immigration Act of 1917, the Immigration and Nationality Act of 1952, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *Id.* at 65–70.

41. Wynne seeks a declaration by this Court that EEO 538 violates the Supremacy Clause of the U.S. Constitution and is therefore void *ab initio*.

42. An actual controversy exists concerning EEO 538 and the requested declaration will terminate the controversy.

## COUNT III–DECLARATORY JUDGMENT
### (Violation of the Equal Protection Clause of the U.S. Constitution)

43. The preceding paragraphs 1–19 are incorporated by reference.

   **A. Violation of the Equal Protection rights based on the national origin, alienage, and race of Wynne's passengers.**

44. EEO 538 is intentionally discriminatory based on national origin, alienage, and race and fails the "strict scrutiny" test. Although it may be facially neutral, it has an adverse effect motivated by discriminatory animus and was applied in an intentionally discriminatory manner. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000).

45. The intentional discrimination is obvious from the face of EEO 538 that targets only the migrant charter buses. EEO 538 also references prior Emergency Executive Order No. 224 according to which a state of emergency was declared. The discriminatory intention is even more apparent in Emergency Executive Order No. 224. *See* Ex. B; s*ee also, e.g., Deide*, __ F.Supp.3d __, 2023 WL 3842694, *16 (S.D.N.Y, June 6, 2023) (holding that the comments below strongly suggest the discriminatory motive of the decision makers: "these people" and "are they going to be walking around your kid's elementary school").

> **WHEREAS**, many of the asylum seekers are coping with the effects of trauma and exhaustion, as well as <mark>other physical and mental health concerns;</mark> and

*Ex. B – Emergency Executive Order No. 224*

46. EEO 538 unlawfully discriminates based on alienage, national origin, or race on its face or as applied and therefore violates the Equal Protection Clause.

**B. Violation of Wynne's Equal Protection rights due to arbitrary classification.**

47. EEO 538 treats similarly situated persons (bus companies and their passengers) differently.

48. In *Park 'N Fly of Tex., Inc.*, the court held that the classification of shuttle busses from a parking lot company as commercial vehicles and prohibiting their access to upper-level passenger discharge areas at Houston airport, but permitting access to the same type vehicles owned by the city of Houston was arbitrary and unreasonable and in violation of the Equal Protection Clause. *Park 'N Fly of Tex., Inc.*, 327 F. Supp. at 925–26.

49. EEO 538 only targets operators of charter buses. EEO 538 then classifies the operators of charter buses into two categories: (1) operators that are transporting ten or more passengers who are likely to seek emergency shelter and other immediate services; (2) all other operators of charter buses.

50. The distinction between charter buses and other buses is completely arbitrary and unreasonable. For instance, any other type of bus can drop off the same type of passengers anytime, anywhere, and without notice. But upon 32 hours' notice, a charter bus can only drop off passengers at a designated location between the hours of 8:30 a.m. to 12:00 p.m., Monday through Friday.

51. EEO 538 also treats the charter buses differently solely based on the economic ability of their passengers. "A State may not employ an invidious discrimination to sustain the political viability of its programs." *Mem'l Hosp. v. Maricopa Cnty.*, 415

U.S. 250, 256 (1974) (holding that the Arizona durational residence requirement for nonemergency free medical care violated the Equal Protection Clause).

52. EEO 538 on its face or as applied treats similarly situated persons differently without a reasonable basis, in violation of the Equal Protection Clause of the U.S. Constitution.

53. Wynne seeks a declaration that EEO 538 violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and is therefore void *ab initio*.

54. An actual controversy exists concerning EEO 538 and the requested declaration will terminate the controversy.

## COUNT IV–DECLARATORY JUDGMENT
**(Violation of the Due Process Clause of the U.S. Constitution)**

55. The preceding paragraphs 1–19 are incorporated by reference.

56. "The right of interstate travel has repeatedly been recognized as a basic constitutional freedom." *Mem'l Hosp.*, 415 U.S. at 254. EEO 538 violates both Wynne's and its passengers' fundamental right of free movement/interstate travel and fails the strict scrutiny test. *See Williams v. Town of Greenburgh,* 535 F.3d 71, 75 (2d Cir. 2008); *Jeffery v. City of New York,* No. 20-CV-2843, 2022 WL 204233, at *5 (E.D.N.Y. Jan. 24, 2022) ("Freedom of movement…is a well-established fundamental right"); *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) (holding that "the Constitution protects a right to travel locally through public spaces and roadways."); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) ("Citizens have a fundamental right of free movement...") (citation omitted); *Lutz v. City of York, Pa.*, 899 F.2d 255, 268 (3d Cir. 1990) ("the right to move freely

about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history'") (citation omitted); *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (acknowledging that the fundamental right of free movement protects the interstate travel).

57. "To trigger strict scrutiny, there need not be a complete bar to travel, as the right to intrastate travel includes freedom from curtailment of said travel." *Deide v. Day*, __ F.Supp.3d __, 2023 WL 3842694, *21 (S.D.N.Y, June 6, 2023). "[T]o the extent the purpose of [a statutory] requirement is to inhibit the immigration of indigents generally, that goal is constitutionally impermissible." *Mem'l Hosp.*, 415 U.S. at 264.

58. EEO 538 violates the fundamental right of interstate travel of Wynne and its passengers. EEO 538 makes it extremely difficult, if not impossible, for Wynne to transport people across state lines from Texas to New York City and even within the State of New York.

59. EEO 538 is not narrowly tailored to serve a compelling state interest and therefore violates Wynne's Constitutional rights.

60. Wynne seeks a declaration that EEO 538 violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and is therefore void *ab initio*.

61. An actual controversy exists concerning EEO 538 and the requested declaration will terminate the controversy.

**COUNT V – 42 U.S.C. § 1983**

62. The preceding paragraphs 1–62 are incorporated by reference.

63. As allege above, Wynne has suffered a deprivation of its rights under the U.S. Constitution as a result of Defendant's EEO 538.

64. In issuing and enforcing EEO 538, Defendant acted, and continues to act, under color of state law.

65. Wynne is a proper plaintiff to bring a claim under Section 1983 because it is a limited liability company with substantive federal rights deprived by a person acting under color of state law. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Allee v. Medrano*, 416 U.S. 802, 819 (1974).

66. As a direct and proximate result of Defendant's action, Wynne has suffered damages including, without limitation, lost economic opportunities and increased costs, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Wynne demands the following relief:

A) A declaration by this Court that EEO 538 violates the Supremacy Clause of the U.S. Constitution and is therefore void;

B) A declaration by this Court that EEO 538 violates the Interstate Commerce Clause of the U.S. Constitution and is therefore void;

C) A declaration by this Court that EEO 538 violations the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and is therefore void;

D) A declaration by this Court that EEO 538 violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and is therefore void;

E) Preliminary injunctive relief enjoining enforcement of EEO 538 during the pendency of this action;

F) Permanent injunctive relief enjoining enforcement of EEO 538;

G) Compensatory damages in such amount as shown by the proofs;

H) Attorney's fees and costs, as permitted by law; and

I) All other appropriate relief.

Respectfully submitted,

**ANDREWS MYERS, P.C.**

*/s/ Elliot J. Kudisch*
ELLIOT J. KUDISCH
EKudisch@AndrewsMyers.com
MARK J. LEVINE*
MLevine@AndrewsMyers.com
HAMED MORADI*
HMoradi@AndrewsMyers.com

1885 Saint James Place, 15th Floor
Houston, Texas 77056-4110
T: (713) 850-4200
F: (713) 850-4211
**Application for Admission Pro Hac Vice Forthcoming*

***ATTORNEYS FOR PLAINTIFF***